# Fidelity & Deposit Co. of Maryland v. Commonwealth, for Use and Benefit of Nelson County et al. Muir, Wilson & Muir v. West et al.

(Decided April 25, 1933.)

WM. MARSHALL BULLITT, LEO T. WOLFORD, L. S. BLICK-
ENSTAFF, MIDDLETON MILLER, and BRUCE & BULLITT for
appellant Fidelity & Deposit Co.

ERNEST FULTON for the Commonwealth and Muir, Wilson
& Muir.

OPINION OF THE COURT BY JUDGE CLAY—Affirming
on appeal and reversing on cross appeal.

R. H. West was sheriff of Nelson county for the
years 1926 to 1929, inclusive, and the Fidelity & De-
posit Company of Maryland was his surety. This action
was brought by the commonwealth, for the use and
benefit of Nelson county and the Nelson county board
of education, to surcharge the settlements which West
as sheriff made for the years mentioned. On final hear-
ing the lower court awarded Nelson county the sum of
$3,170.48, with interest, and the Nelson county board of
education and the Boston consolidated school district
the sum of $21,863.80, with interest. From that judg-
ment the surety appeals.

It is first insisted that the sheriff was not
chargeable with the amount of Louisville & Nashville
Railroad franchise taxes in the Boston consolidated
school district, as these taxes were never certified by
the auditor, and consequently were not owing by the
taxpayer. The method of assessing railroad franchises

is as follows: All railroads are required to make certain detailed reports to the auditor of the state, and from these reports and hearings thereon the state tax commission values or assesses the franchise. Sections 4077 and 4078, Kentucky Statutes. By section 4084, Kentucky Statutes, the auditor is required to certify the valuations fixed by the state tax commission to the county clerk, and that officer is required to certify the valuations to the proper collecting officers. The Louisville & Nashville Railroad might have declined to pay the taxes until the proper certificate was made. However, it did not wait for the certificate. The franchise had been valued and a proper levy had been made. The amount due the district was a matter of simple calculation. The railroad actually paid the sheriff the taxes due the consolidated school district, and he in turn accounted in his settlement for the taxes so paid. In no sense were the taxes so paid and collected illegal. The railroad owed the taxes, and they were accepted by the sheriff in discharge of its obligation. The money came into his hands by virtue or color of his office, and the statute makes the surety liable. Section 4027, Kentucky Statutes; Commonwealth v. Finch, 8 Ky. Law Rep. 961; Combs v. Breathitt County, 46 S. W. 505, 20 Ky. Law Rep. 569; Mason v. Cook, 187 Ky. 260, 218 S. W. 740. It follows that the court did not err in charging the sheriff with the taxes so collected and paid by him to the Boston consolidated school district.

■ The next contention is that appellant is not liable for the taxes collected by the sheriff for the Boston consolidated school district for the year 1926, as there was no valid levy for that year. The levy for the year 1926 was made by the county board of education. It is argued that the county board was without authority to make a levy to meet the ordinary expenses of the school. It is true that under the statute now in force levies for consolidated school districts are made by the fiscal court, and not by the county board of education, Kentucky Statutes, sec. 4426-2; Hockensmith v. County Board of Education, 240 Ky. 76, 41 S. W. (2d) 656; but for the year 1926 the situation was different. Prior to the creation of the consolidated school at Boston, there had been a graded school, which had been abolished. An election was then held to establish a consolidated school, and the voters in the consolidated district voted in favor of its establishment and authorized the county

board of education to levy an annual tax not to exceed $1 per hundred on value of property, and not to exceed $1 on each poll for the purpose of establishing, equipping, and maintaining a school at Boston, and for the purpose of paying all local expenses connected with the school. Pursuant to this authority, the county board of education levied a tax of 90 cents on each $100 worth of property in the district belonging to white persons and corporations, and $1 on each male citizen in the district for the purpose of maintaining and equipping the high school for the school year 1926-27, and paying all necessary expenses, and also for the purpose of providing a sinking fund for the payment of the bonds that had been voted. It is true that in respect of clearness the statutes then in force leave much to be desired. But a review of the statutes discloses the following situation: By section 4426a-9, Kentucky Statutes 1922, the county board of education was given the power to lay off a boundary, including a number of subdistricts, and submit to the voters in that boundary the proposition of a tax sufficient to provide for the consolidation of the schools within that boundary and the transportation of pupils to and from the school. By section 4426a-10, Kentucky Statutes 1922, it was provided that the term ''local expense'' in the notices of an election for the purpose of voting a tax to provide for the consolidation of schools should include the transportation of students to and from the consolidated school, and that, where the tax had already been voted, the term ''local expenses'' should be construed to include the transportation of children in such cases. Also section 4433a-1, Kentucky Statutes 1922, gave the county boards of education the power to provide funds for purchasing suitable grounds and buildings, for erecting and repairing suitable buildings, and for other expenses needful in conducting a consolidated school in that county, and also the power to order an election and submit to the voters of any consolidated school district the question of issuing bonds for the purpose of providing suitable grounds, school buildings, furniture, and apparatus for the district. By section 4433a-2, Kentucky Statutes 1922, county boards of education were authorized and empowered to levy annually a tax in addition to that already voted for the purpose of meeting the interest on bonds that had been voted and creating a sinking fund for the payment of the principal thereof.

In addition to this, section 4433b, Kentucky Statutes 1922, authorized the holding of an election in a proposed consolidated and graded high school district for the purpose of taking the sense of the legal voters on the proposition whether or not they would vote an annual tax in any sum named in the order on each $100 worth of property, and also a poll tax not exceeding $1.50 per capita on each white male inhabitant over 21 years of age, for the purpose of erecting, purchasing, or repairing suitable buildings, and for purchasing, repairing, or equipping conveyances for the children to and from the school building and for the equipping of school building and employment of drivers for conveyances, "and teachers for the schools." Construing these sections together, it cannot be doubted that they conferred on the county board of education, after the necessary authority had been given by the voters of the consolidated school district, the power to levy a tax within the limits fixed by the vote not only for the purpose of providing a sinking fund, but to pay all the other expenses of the school. This view finds support in the ruling of Judge Carroll, concurred in by Chief Justice Miller and Judges Settle, Turner, and Hurt, in the case of Christopher v. Robinson, 164 Ky. 262, 175 S. W. 387, which was before him on motion to dissolve an injunction. Indeed, any other view would compel the conclusion that for the year 1926 there was no official body authorized to levy a tax in consolidated school districts.

■ There is also the contention that, inasmuch as section 4426a-9, Kentucky Statutes 1922, was expressly repealed by section 4426-2, Kentucky Statutes, enacted in the year 1926, which fixed the tax rate at not exceeding 75 cents on each $100 of property within the district, the fiscal court upon which the power of taxation was conferred was without authority to exceed the 75-cent limit. Whether or not the right to impose a tax not exceeding $1 on $100 worth of property, which had been authorized by the voters of the consolidated district, could be taken away by the Legislature in view of the fact that it was authorized in part to pay bonds that had been voted, we need not determine. The statute under which the vote was taken expressly provided that, "when such a tax is voted in such consolidated district for local school purposes it shall remain and be collected annually in accordance with the provisions

of law until repealed by a vote of the people at an election called and conducted in the same manner in which the tax was voted.'' In the absence of any provision to the contrary, and there is none in the repealing act, we conclude that the Legislature did not intend to affect the status theretofore created by taking away the right of taxation conferred by the voters of the district, which the Legislature plainly intended should continue until repealed by the voters at an election called and conducted in the same manner in which the tax was voted. Kirk v. Roberson, 76 S. W. 183, 25 Ky. Law Rep. 633. Furthermore, the power of the fiscal court for the years in question to levy and collect common school taxes, and also consolidated school taxes in a consolidated school district, cannot be doubted.

■ Lastly it is insisted that appellant as surety is not liable for the sum of $55.31 which the county claims through error it overpaid the sheriff for the year 1926. As we view it, the question of overpayment in any particular year is not involved. The purpose of the action is to surcharge and correct all the settlements made by the sheriff and determine the amount due by him. The evidence shows that, in addition to other sums, the sheriff still owes the $55.31, and we see no reason to disturb the judgment so far as that item is concerned.

■ On the cross-appeal it is insisted that the sheriff should account for a 6 per cent. penalty on all school taxes for the years 1928 and 1929, as required by section 4147, Kentucky Statutes, and also for the penalty and interest provided by section 4148, Kentucky Statutes, on all taxes not paid by December 31st in those years. It is true that in a sense school taxes are state taxes, City of Louisville v. Board of Education, 154 Ky. 316, 157 S. W. 379, but whether they are or not under any particular statute depends on the sense in which the words ''state taxes'' are used in that statute. Kentucky & West Virginia Power Co. v. Holliday, 216 Ky. 78, 287 S. W. 212.

In the recent case of Clarke v. Commonwealth, 233 Ky. 728, 26 S. W. (2d) 1041, we had occasion to consider a statute substantially the same as section 4147, Kentucky Statutes, and there ruled that school taxes within the meaning of that statute were not state taxes, and that, with respect to school taxes, the sheriff was not responsible for the penalty therein provided. Though the statute has been slightly changed since that time,

we do not regard the change as sufficient to compel a different conclusion on the question. We therefore hold that no penalty on school taxes should be charged against the sheriff under section 4147, Kentucky Statutes.

However, it is at once apparent that the same conclusion cannot be reached respecting the penalty and interest provided for in section 4148, Kentucky Statutes. Under that section all state, county, and district taxes, except as otherwise specially provided, not paid on December 31st of each year after the same are due, are deemed delinquent, and bear interest at the rate of 6 per cent. per annum from that date until paid, together with a penalty of 6 per cent. Moreover it is made the duty of the sheriff to collect the interest and penalty and account for the same in the same way in which he is required to collect and account for the taxes. This statute leaves no room for argument. The words of the statute are ''all state, county and district taxes.'' This language embraces all taxes whether imposed by the state, county, or a district, and therefore includes school taxes. Indeed it was pointed out in Clarke v. Commonwealth, supra, that section 4148, Kentucky Statutes, applied to all taxes, and that the sheriff was responsible for the penalty and interest therein provided, but that the petition in that case did not seek a recovery therefor, and the record was not so prepared as to enable the court to determine the amount. In this case, however, a recovery of the penalty and interest is sought, and the case has been prepared so that the amount thereof may be fixed. We therefore conclude that the court should have included in the judgment the interest and penalty on school taxes for the years 1928 and 1929. Fidelity & Deposit Co. v. Logan County, 119 Ky. 428, 84 S. W. 341, 27 Ky. Law Rep. 66.

The appeal of Muir, Wilson & Muir, a banking institution, first challenges the correctness of that portion of the judgment ruling that the surety company on payment of the indebtedness was entitled by subrogation to a lien on certain real estate owned by the sheriff, and that this lien was superior to a mortgage held by them. The statute gives the commonwealth, the county, and taxing district a lien from the date the sheriff begins to act upon all his real estate until the whole amount of money collected by him, or for which he may be liable, shall have been paid, section 4130, Kentucky

Statutes, and a surety who pays the commonwealth, county, or taxing district is substituted to its lien upon such real estate. Dawson v. Lee, 83 Ky. 49. The record discloses that West acquired the property in question on May 1, 1923, and that, while acting as deputy sheriff, he, on July 2, 1925, executed a mortgage to Muir, Wilson & Muir for the sum of $6,250, which the evidence shows was advanced to him for the purpose of enabling him to settle with the sheriff. The mortgage was attached to the deed, and neither the deed nor the mortgage was recorded until April 18, 1929. By section 496, Kentucky Statutes, it is provided that no deed or deed of trust, or mortgage conveying a legal or equitable title to real or personal estate, shall be valid against a purchaser for a valuable consideration without notice thereof, or against creditors, until such deed or mortgage shall be acknowledged or approved according to law and lodged for record. It is further provided that the word "creditors" shall include all creditors, irrespective of whether or not they may have acquired a lien by legal or equitable proceedings, or by voluntary conveyance. Immediately on the default of West, the commonwealth, county, and taxing district became creditors. It is not claimed that any officer of the commonwealth, county, or district, or that any officer of the surety company authorized to act on its behalf, had actual knowledge of the existence of the mortgage, or of facts sufficient to put him on inquiry. In the circumstances, the court did not err in holding that, upon payment of the indebtedness, the lien of the surety company would be superior to that of the mortgage.

The appeal of the Muir, Wilson & Muir Company, also challenges the correctness of that part of the judgment directing that, when the judgment rendered against West and the surety company shall have been satisfied by the surety company, Muir, Wilson & Muir should pay the surety company the sum of $595.62. It appears that this sum is on deposit to the credit of West as sheriff, and represents taxes collected by the bank on behalf of West. If not in fact the property of the county and county board of education, it cannot be doubted that with respect to them the deposit is a trust fund, Hill v. Flemming, 128 Ky. 201, 107 S. W. 764, 32 Ky. Law Rep. 1065, 16 Ann. Cas. 840, which the bank, having knowledge thereof, has no right to apply on the individual debt of the sheriff, or to

withhold from the county and board of education, or from the surety company which, on payment of the attached indebtedness of the sheriff, will be subrogated to their rights. Farmers' & Traders' Bank v. Fidelity & Deposit Company of Maryland, 108 Ky. 384, 56 S. W. 671, 22 Ky. Law Rep. 22.

On the appeals of Fidelity & Deposit Company of Maryland and Muir, Wilson & Muir, the judgment is affirmed. On the cross-appeal of the Commonwealth v. Fidelity & Deposit Company of Maryland, the judgment is reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.

Whole court sitting except Judge Richardson.